IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cr. No. 19-1993 MV |
| | ) |
| **RYAN MARTINEZ**, | ) |
| | ) |
| Defendant. | ) |

UNITED STATES' SENTENCING MEMORANDUM

On February 1, 2022, the defendant will appear before the Court for sentencing after his guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. The United States respectfully requests that, at that time, the Court impose the agreed-upon sentence of 48-months incarceration.

The Offense Conduct

On February 7, 2019, the Defendant was a fugitive on the run. On that date, he was in Farmington, New Mexico, so hiding in a small town proved to be a difficult task for him. This was made no easier because the Defendant was well known to detectives in the Farmington Police Department—they knew he had a warrant, and they were actively looking for him. He was not difficult to find.

That day, while patrolling the streets of Farmington, Detective Nathan Babadi received information that the Defendant would be traveling on a particular street in a white color passenger car with Texas license plates. Sure enough, at approximately 7:37 p.m., Detective Babadi spotted the Defendant at that precise location in that exact car. So, Detective Babadi did what detectives do: he effected a traffic stop.

When Detective Babadi got to the driver's side window, he observed the Defendant in the front passenger seat.  After observing Martinez, Detective Babadi asked him to step out of the vehicle.  Martinez began to reach into his left pocket, at which time Detective Babadi gave him verbal commands to remove his hand.  At this time, another detective who was on scene, Chris Stanton, grabbed Martinez's wrist while Martinez stepped out of the car.  As this occurred, Martinez stated that he had a firearm on his left side.

Once Martinez was in handcuffs, Detective Stanton removed a black handgun from Martinez's rear left pants pocket.  The firearm was a .380 caliber Keltec Pistol (serial KPD51).  The magazine of the firearm had ammunition inside of it.  FBI SA Bryan Acee determined that the gun was manufactured in Florida and the ammunition was manufactured in Idaho.  FBI TFO Travis Spruell test-fired the gun and it fired as designed.

This case followed.

On May 28, 2021, the Defendant entered a plea agreement that contained an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that called for a specific sentence of 48 months. (Doc. 51).  The United States joins the Defendant in asking that the Court accept the agreement and sentence the Defendant accordingly.

The PSR

The United States has no objection to the PSR.  After applying all applicable enhancements and credits, the PSR concluded that the Defendant fell into offense level 17 with a criminal history category of V, which yields an advisory guideline range of 46 to 57 months.  PSR at ¶ 79.  The math employed by United States Probation is correct.

**History and Characteristics of the Defendant**

The PSR considered the history and characteristics of the defendant. *See* PSR Part B, ¶¶ 34-43; Part C, ¶¶ 53-77. It reviewed his criminal history, his upbringing, and the events surrounding the day of his arrest. *See Id*. The PSR concluded that a departure below the applicable guideline range is not warranted. PSR at ¶ 94. The United States agrees with that assessment, and therefore submits that the plea agreement before the Court comports with this § 3553 factor.

With regard to the specifics, the PSR notes nine contacts with law enforcement that began when defendant was eighteen and ultimately resulted in several felony convictions. Notably, those convictions include violence: the Defendant has been convicted of assaults and robbery. On top of that, the Defendant has been arrested for an array of property and narcotics crimes. This impressive history speaks to the defendant's violent proclivities and general disdain for the law. His long and violent criminal history well entitle him to the 48-month sentence called for in the plea agreement.

Turning to the defendant's personal characteristics, nothing about his history removes him from the heartland of similarly-situated defendants that would entitle him to a sentence less than what he has agreed to serve. The PSR touches on familiar themes: drug use starting at a young age that was inexcusably instigated by family members followed by an addiction that soon took hold. The Defendant also experienced trauma in his formative years with the tragic murder of his brother. While the United States does not doubt that the combination of these issues have presented obstacles during the Defendant's life journey, they are not rare. Indeed, nothing about the Defendant's history distinguishes him from many defendants facing sentencing in federal court for similar crimes and who are serving similar sentences. Thus, his history is not unique in

terms of his personal characteristics, and nothing about his history provides a foundation for the Court to do anything but accept the plea and sentence the Defendant accordingly.

### Promote Respect for the Law

The punishment that this Court imposes should reflect the defendant's danger to the public as a result of all his criminal conduct. Clearly, his prior convictions and sentences were not a sufficient deterrent and did not promote respect for the law. The defendant's views reflect a disbelief that his criminal actions ever will result in serious punishment or consequences. Thus, the agreed-upon sentence will breathe life into this § 3553 factor.

### Deter Criminal Conduct

Sadly, the Defendant's his history speaks to his lack of interest for becoming a productive citizen, and his lack of respect for the law reveals much about his characteristics. Thus, the sentence the Government and Defendant have agreed upon will afford adequate deterrence to further criminal conduct as contemplated in § 3553(a)(2)(B).

### Protect the Public

The defendant is a danger to the community. His list of crimes have created a string of victims, and he has shown no desire to reform his behavior to comply with the law. He has no regard for how his actions may affect others as noted by his incidents of violence. The defendant's arrest record is relevant to the length of sentence that would be required to protect the public as contemplated by § 3553(a)(2)(C).

### Avoid Unwarranted Sentencing Disparities

A sentence within the applicable guideline range is the best approach to preventing unwarranted sentencing disparities between similarly-situated defendants. The guidelines have set a range of 46-57 months of imprisonment for a defendant who has this criminal history

category and who has committed the offense at issue here. Thus, a sentence of 48 months, which is squarely within that range, will undoubtedly avoid unwarranted sentencing disparities.

## CONCLUSION

A sentence of 48 months of imprisonment will be sufficient, but not greater than necessary, to reflect the seriousness of the offense with which the defendant stands convicted. This sentence will promote respect for the law and attempt to provide just punishment for the offense. Any lesser sentence will fail to afford adequate deterrence to the potential future conduct of the defendant or others. Furthermore, a sentence of 48 months of imprisonment is necessary to protect the public from further crimes of the defendant – crimes which his criminal history reflects he will certainly commit again.

Respectfully submitted,

FRED J. FEDERICI
United States Attorney

_____/s/_____
Jack E. Burkhead
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274

I hereby certify that on January 7, 2022, I
filed the foregoing electronically through the
CM/ECF system, which caused counsel for
the Defendant to be served by electronic

means, as more fully reflected on the Notice of Electronic Filing.

*Electronically filed on January 7, 2022*
Jack E. Burkhead
Assistant United States Attorney